# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

—o0o—

FRANK ALLEN TRAVALINI,                    )   1:04-CV-06588 OWW JMD (HC)
                                          )
                    Petitioner,           )   FINDINGS AND RECOMMENDATION
                                          )   REGARDING PETITION FOR WRIT OF
        v.                                )   HABEAS CORPUS
                                          )
                                          )
THE PEOPLE OF CALIFORNIA,                 )
                                          )
                    Respondents.          )
_____ )

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  This action has been referred to this court pursuant to 28 U.S.C.
§ 636(b)(1) and Local Rule 72-302.

### PROCEDURAL HISTORY

        Petitioner is confined by the State of California, pursuant to a judgment of the Superior
Court of California, County of Kings.  On September 12, 2001, Petitioner was sentenced to three
consecutive terms of twenty-five years to life, following his convictions for escape from custody
by means of force (Cal. Penal Code § 4532(a)), carjacking (Cal. Pen. Code § 215), and evasion of

police by means of reckless driving (Cal. Veh. Code § 2800.2).

On October 14, 2003, the California Court of Appeal affirmed the judgment of the trial court with modifications not affecting the length of sentence.  On January 28, 2004, the California Supreme Court denied review.

On October 12, 2003, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  The petition was denied on October 30, 2003.  On November 12, 2003, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal.  The appellate court denied the petition on November 26, 2003.  On December 19, 2003, Petitioner filed a petition in the California Supreme Court.  The California Supreme Court denied the petition on October 27, 2004.

Petitioner filed the instant Petition for Writ of Habeas Corpus on November 22, 2004. Petitioner subsequently amended his petition on March 13, 2007.  Respondent filed its Answer on June 1, 2007.

## FACTUAL BACKGROUND[1]

On July 3, 1995, Zainab Mohammed returned home at approximately 11:00 p.m. to find the apartment she shared with her husband, Abdulhameed Kamaluddin, in disarray.  A gold watch, other jewelry, $3,000, and a set of car keys were missing from the apartment.  Clothes and toiletries were strewn on top of the bed; included in these items was a wallet with defendant's identification. (Count I, burglary).

Christina Dempsey was working at the Texaco Star Mart on July 3, 1995. At approximately 10:30 p.m. defendant came in the store.  He got a drink and brought it to the counter.  He asked Dempsey if she would hold on to his gold watch until he got some money.  Dempsey said no.  Defendant returned later that evening, picked up several items, and placed the items on the counter.  Defendant started to take off his watch.  Dempsey told defendant she could not accept the watch as payment for the goods.  Defendant picked up the items and left.  (Count II, theft with a prior theft-related conviction).

Defendant was arrested shortly thereafter.  He had Kamaluddin's watch on when he was arrested.  He said he did not enter Kamaluddin's residence.  He also told the officers he hid car keys (belonging to Kamaluddin) in the patrol car.

On August 29, 1995, Sheriff's Deputy Lemos was taking defendant and other inmates to the transportation van after defendant's preliminary hearing on the above charges.  While Lemos was putting defendant in the van, defendant shifted and his belly chains dropped to the ground.  Defendant ran and started to

---

[1] The Court adopts the facts as summarized by the California Court of Appeal.

2

climb the fence. Lemos gave chase and attempted to pull defendant off the fence. Defendant threatened to hit Lemos in the head with his handcuffs. Defendant scaled the fence, took off his jail clothes, and ran. (Count III, escape by force.) Lemos found a metal shank at the crime scene. (Count IV, possession of a sharp instrument by a prisoner [this count was reversed in defendant's original appeal].)

Defendant entered the home of Evelyn Pereira and told her he needed a ride to Hanford. Pereira grabbed her car keys and walked out to the garage. (Count VII, burglary; defendant was acquitted of this charge). Pereira told her husband that defendant needed a ride. Jerry Pereira unlocked the doors to the van. Defendant got in the passenger door. Defendant said, "let's go." Jerry noticed that defendant had his hands in his lap and asked what defendant was carrying. Defendant said he had a knife. Jerry backtracked and defendant demanded Jerry's keys. Jerry gave defendant the keys, and defendant left with the Pereira van. (Count V, carjacking and count VI, robbery; defendant was acquitted of the alternate charge of robbery).

An officer recognized defendant as he drove the van. After realizing the officer recognized him, defendant led officers on a high-speed chase exceeding 100 miles per hour. Defendant eventually bailed out of the car and ran. He was apprehended. (Count VIII, evading a police officer).

Defendant does not challenge any portion of the sanity phase; we need not set forth those facts in detail. We note, for purposes of discussion of the sentencing issues, that defendant's family members testified that he was developmentally slow and had other disabilities. He could not function on his own. He used drugs heavily and experienced mental problems as a result. Some experts believed that defendant was a malingerer.

## DISCUSSION

### I. **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d). Accordingly the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied*, 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

1   Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

2   521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after its enactment).  The

3   instant petition was filed after the enactment of the AEDPA and is therefore governed by its

4   provisions.

5   II.  **Standard of Review**

6           This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

7   custody pursuant to the judgment of a state court only on the ground that he is in custody in

8   violation of the Constitution or laws or treaties of the United States."  28 U.S.C . § 2254(a).

9           The instant petition is reviewed under the provisions of the AEDPA.  Lockyer v.

10  Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, a petition for habeas corpus will not be

11  granted unless the adjudication in question "resulted in a decision that was contrary to, or

12  involved an unreasonable application of, clearly established Federal law, as determined by the

13  Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable

14  determination of the facts in light of the evidence presented in the State Court proceeding."  28

15  U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

16          As a threshold matter, this Court must "first decide what constitutes 'clearly established

17  Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at

18  71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining "clearly established Federal law," the Court

19  looks to the "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the

20  relevant state-court decision."  Id., *quoting* Williams, 592 U.S. at 412.  "In other words, 'clearly

21  established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth

22  by the Supreme Court at the time the state court renders its decision."  Id.

23          Finally, this Court must consider whether the state court's decision was "contrary to, or

24  involved an unreasonable application of, clearly established Federal law."  Lockyer, 538 U.S. at

25  72, *quoting* 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may

26  grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

27  Court on a question of law or if the state court decides a case differently than [the] Court has on a

28  set of materially indistinguishable facts."  Williams, 529 U.S. at 413; see also   Lockyer, 538 U.S.

ed                                                  4

at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

This Court may not issue the writ simply because in its independent judgment the state court decision applied clearly established federal law erroneously or incorrectly; for a writ to issue, 'that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, ninth circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. DuCharme, 200 F.3d 597, 600-01 (9th cir. 1999).

AEDPA requires that this court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

III.  **Review of Petitioner's Claims**

      **A.     Claims One and Two:  Equal Protection/Ex Post Facto/Due Process**

In his first and second claims for relief, Petitioner asserts his sentence under the California Three Strikes Law violated his equal protection and due process rights. Specifically, Petitioner claims that the prior convictions used to enhance his sentence were in part the result of plea bargains, and that he would not have pled guilty if he knew these convictions could be used in the future to enhance his sentence. He claims his sentencing under the Three Strikes law violates the constitutional ban on ex post facto laws.

///

ed

1          1.      State Court Review

2          Petitioner's claims were first presented in the California Superior Court, which denied

3    said claims on October 24, 2004.  The court's order states: "The petition raises issues which

4    petitioner admits are either still on appeal or could have been appealed.  In re Ali (1965) 236

5    Cal.App.2d 679, 680-681."  This appears to be the only finding by the Superior Court with

6    respect to Petitioner's equal protection and due process claims..

7          The California Court of Appeal and California Supreme Court subsequently denied

8    Petitioner's claims on November 26, 2003 and October 27, 2004, respectively.  We presume the

9    higher courts relied on the Superior Court's finding in denying Petitioner's claims.  See Y1st v.

10   Nunnemaker, 501 U.S. 797, 802-06 (1991).

11         2.      Review of Petitioner's Claims

12                 **Procedural Default**

13         A federal court will not review claims in a petition for writ of habeas corpus if the state

14   court has denied relief on those claims on a state law ground that is independent of federal law

15   and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 750 (1991).  This

16   doctrine of procedural default is based on the concerns of comity and federalism. Id., at 730-32.

17         There are limitations as to when a federal court should invoke procedural default and

18   refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules.

19   Procedural default can only block a claim in federal court if the state court "clearly and expressly

20   states that its judgment rests on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263

21   (1989).

22         Although it appears likely the state courts denied Petitioner's equal protection and due

23   process claims on procedural grounds for failing to raise them on direct appeal, We do not find

24   the court's statement "clearly and expressly states that its judgment rests on a state procedural

25   bar."  Harris v. Reed, 489 U.S. 255, 263 (1989).  Consequently, we reach the merits of

26   Petitioner's claims.

27   ///

28   ///

1

**Merits**

2      The Ex Post Facto Clause prohibits a state from enacting a law that imposes additional

3  punishment for a crime than the punishment was when the defendant committed the crime.

4  Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964 (1981).  A law violates the Ex Post

5  Facto clause under four circumstances:  (1) when it punishes a act which was not a crime when it

6  was committed; (2)  when it makes a crime's punishment greater than when the crime was

7  committed; (3)  when it deprives a person of a defense available at the time the crime was

8  committed; or (4) when it alters the rules of evidence and receives less or different testimony

9  than the law required at the time of the commission of the offense, in order to convict the

10  offender.  Collins v. Youngblood, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719 (1990); Carmell v.

11  Texas, 529 U.S. 513, 522 (2000).

12      The application of a sentencing enhancement due to a prior conviction does not violate

13  the Ex Post Facto Clause as long as the statute was in effect before the triggering offense was

14  committed.  Brown v. Mayle, 283 F.3d 1019 (9th Cir. 2002), vacated 538 U.S. 901, on remand

15  2003 WL 21349784; United States v. Sorenson, 914 F.2d 173, 174 (9th Cir. 1990); United States

16  v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir. 1984).  The California Three Strikes Law

17  took effect in March of 1994, before Petitioner committed the triggering offenses.  Consequently,

18  Petitioner's sentence does not violate the Constitution's prohibition against ex post facto laws.

19      Nor does Petitioner's argument that his contract rights have been violated have merit.

20  Under California law, plea bargains are interpreted according to contract law principles.  Cal.

21  Civ. Code § 1635; Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir. 2006) (en banc).  Plea

22  bargains "are deemed to incorporate and incorporate not only the existing law but the reserve

23  power of the state to amend the law or enact additional laws."  Gardner v. Yarborough, 176

24  Fed.Appx. 882 (9th Cir. 2006), *quoting* People v. Gipson, 117 Cal.App.4th 1065, 1070 (2004).

25  None of Petitioner's plea agreements contains an express term limiting the State's power to use

26  his convictions for future sentencing enhancements.  Nor does anything in the record suggest that

27  Petitioner or the state understood the plea agreements to limit any future sentences.  Petitioner

28  notes that in his prior plea bargains he "was advised that he would receive an additional one to

five years in criminal enhancements were he ever convicted of another felony." Pet. at 8. This merely described the consequences of Petitioner's plea under then-existing law; it was not a promise to limit the State's future use of those convictions. Gardner, 176 Fed.Appx. 882.

Because Petitioner's sentence did not violate either his contract rights or the prohibition against ex post facto laws, Petitioner's claims should be denied.

**B.     Claim Three: Cruel and Unusual Punishment**

In his third claim for relief, Petitioner asserts that his sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment.

1.     State Court Review

Petitioner's claim was first presented on direct appeal to the California Court of Appeal. The Appellate Court denied Petitioner's claim, stating:

> Defendant committed the current offenses when he was 35 years old. His first offense, a burglary conviction, occurred in 1978 when he was 18 years old. In 1981, he was again convicted of burglary. While on probation in 1983, he was sent to prison after committing a residential first degree burglary. In less than a year following his parole, he committed another residential first degree burglary. He was paroled and then violated parole. In 1992, again less than a year after he was paroled, he was arrested for transportation of methamphetamine, he was convicted and sent to prison in 1992. Following his release he committed the current offenses.
>
> Defendant has demonstrated a clear propensity to victimize society and has done so almost his entire life. While defendant had an admitted drug problem, defendant shows little or no motivation to change his lifestyle and it appears the substance abuse is a substantial factor in committing the crimes. In such a situation, a defendant's drug abuse is not a mitigating factor...
>
> Although defendant may suffer some mental impairment, his escape attempt demonstrates that he is capable of planning and carrying out sophisticated behavior. Defendant's individual characteristics demonstrate a clear threat to public safety....
>
> Finally, in Lockyer v. Andrade, (2003) 538 U.S. [63], and Ewing v. California, (2003) 538 U.S. [11], the United States Supreme Court rejected the claim that life sentences imposed under California's three strikes law constitute cruel and unusual punishment for even relatively minor offenses.

California Court of Appeals Op. At 6-7.

2.     Review of Petitioner's Claim

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may indeed violate the Eighth Amendment. The Supreme Court recently decided two

8

ed

cases which discuss the clearly established federal law applicable to California Three Strikes cases.  See Ewing v.  California, 123 S. Ct.1179 (2003); Lockyer v.  Andrade, 123 S. Ct.1166 (2003).

In Andrade, the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years.  Id. at 1173. Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow."  Id.

The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  Id.   The Court analyzed Andrade's sentence under Rummel v. Estelle, 445 U.S. 263 (1980), Solem v. Helm, 463 U.S. 277 (1983) and Harmelin v. Michigan, 501 U.S. 957 (1991), and held that the state court "did not confron[t] a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrive at a result different from our precedent."  Id. at 1173-1174.  Using section 2254(d)(1)'s "unreasonable application" clause, the Court also held that it was not objectively unreasonable for the California Court of Appeal to conclude that the contours of the gross disproportionality principle permitted an affirmance of Andrade's Three Strikes sentence.  Id. at 1175.

In Ewing, the Supreme Court again reviewed the constitutionality of a Three Strikes sentence of 25 years to life for stealing three golf clubs.  After reviewing the Court's Eighth Amendment jurisprudence, the Court chose to adopt Justice Kennedy's view [2] that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence.  Rather, it forbids only

[2]As expressed in his concurring opinion in Harmelin v.  Michigan, 501 U.S. 957, 1001 (1991)(citing Solem v.  Helm, 463 U.S. 277, 288 (1983).

1    extreme sentences that are 'grossly disproportionate' to the crime.

2    Ewing, at 1186-1187.

3    Recognizing that state legislatures have a right to formulate penological schemes

4    consistent with the state's policy goals and free from federal intrusion, the Court validated the

5    California Three Strikes law, stating "[s]electing the sentencing rationales is generally a policy

6    choice to be made by the state legislatures, not the federal courts." Id. at 1187.  The Court

7    deferred to the California Legislature's policy judgement to enact a tough recidivism statute and

8    held that states have "a valid interest in deterring and segregating habitual criminals." Id. (citing

9    Parke v. Raley, 506 U.S. 20, 27 (1992)).

10    In conducting a proportionality review of Ewing's sentence, the Court stated, "[i]n

11    weighing the gravity of Ewing's offense, we must place on the scales not only his current felony,

12    but also his long history of felony recidivism." Id. at 1189-1190.  The Court noted that "any

13    other approach would fail to accord proper deference to the policy judgments that find expression

14    in the legislature's choice of sanctions." Id. at 1190.  In imposing a Three Strikes sentence on a

15    recidivist criminal, the Court recognized the state's interest in dealing "in a harsher manner with

16    those who by repeated criminal acts have shown that they are simply incapable of conforming to

17    the norms of society as established by its criminal law." Id. (citing Rummel v. Estelle, 445 U.S.

18    263, 276 (1980)).  Accordingly, proportionality review must take this interest into account.  Id.

19    The Court held that Ewing's sentence of 25 years to life was justified by the State's public-safety

20    interest in incapacitating and deterring recidivist felons, and amply supported by Ewing's long,

21    serious criminal record.  Id.

22    In reviewing Petitioner's claim, this Court will begin with a brief overview of the Eighth

23    Amendment jurisprudence and the proportionality standard.  In Rummel, the Court upheld a life

24    sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75

25    by false pretenses, an offense normally punishable by imprisonment for two to ten years.

26    Rummel, 445 U.S. at 266, 100 S.Ct. at 1135.  However, because he had two prior felony

27    convictions (for fraudulent use of a credit card and passing a forged check), and had served two

28    prior prison terms, the prosecution chose to proceed under the state's recidivist statute, which

ed                                                      10

1    carried a life sentence.  Id.  The Supreme Court held that Rummel's sentence of life

2    imprisonment *with* the possibility of parole did not violate the Eighth Amendment.  Id. at 265-

3    266 (emphasis added).  The Court noted that Rummel had suffered two separate convictions and

4    terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and

5    that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the

6    statute for "petty" offenders.  Id. at 278-81.

7          Three years later, the Supreme Court set forth the criteria for finding a sentence to be

8    cruel and unusual punishment under the federal Constitution and affirmed a decision of the

9    Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of

10   parole for a seven-time nonviolent felony recidivist.  Solem v. Helm, 463 U.S. 277, 103 S.Ct.

11   3001 (1983).  Defining a three-part proportionality criteria, the Court concluded that Solem's

12   sentence was grossly disproportionate to his crime of uttering a "no account" check for $100.00,

13   even in light of his prior six nonviolent felony convictions: three for third degree burglary, one

14   for obtaining money under false pretenses, one for grand larceny, and one for driving while

15   intoxicated.  Id. at 279-81.  The Court emphasized that Solem's life sentence was far more severe

16   than the sentence it had considered in Rummel, because Rummel was likely to be eligible for

17   parole in twelve years, while Solem was given no possibility of parole at all.  Id.

18         In Harmelin, the defendant received a mandatory sentence of life in prison *without* the

19   possibility of parole for possession of more than 650 grams of cocaine, his first felony offense.

20   501 U.S. 957 (1991)(emphasis added).  The Supreme Court upheld the sentence, with five

21   justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment.

22   Although the Court did not produce a majority opinion, seven justices favored some manner of

23   proportionality review.  Justice Kennedy, joined by Justices O'Connor and Souter, stated that a

24   noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to

25   the crime, but concluded that courts need not examine the second and third factors of

26   intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold

27   comparison of the crime committed and the sentence imposed leads to an inference of gross

28   disproportionality."  Id. at 1005.

ed

1    The majority of the justices in the <u>Harmelin</u> Court agreed that outside capital punishment,

2    deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of

3    objective guidelines for terms of imprisonment.  501 U.S. at 964.  The threshold for such an

4    inference of disproportionality is high.  <u>See</u> <u>id</u>. at 1001 (Kennedy, J. concurring).  Generally, so

5    long as the sentence imposed by the state court does not exceed statutory maximums, the

6    sentence will not be considered cruel and unusual punishment under the Eighth Amendment.

7    <u>United States v. McDougherty</u>, 920 F.2d 569, 576 (9th Cir. 1990).

8    The <u>Harmelin</u> Court concluded that the defendant's sentence did not meet the threshold

9    factor of "gross disproportionality."  Justice Kennedy stressed the serious nature of Harmelin's

10   offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively

11   minor, nonviolent crime at issue in <u>Solem</u>."  <u>Harmelin</u>, 501 U.S. at 1002.  Justice Kennedy

12   further noted that the "possession, use, and distribution of illegal drugs represent 'one of the

13   greatest problems affecting the health and welfare of our population.'" and that the quantity of

14   cocaine possessed by Harmelin had a potential yield of between 32,500, and 65,000 doses.  <u>Id</u>.

15   In light of the Supreme Court's holdings in <u>Andrade</u> and <u>Ewing</u>, We find the decision of

16   the state court is not an unreasonable application of clearly established Supreme Court precedent.

17   Petitioner fails to cite any Supreme Court authority supporting his position that a seventy-five

18   years to life sentence under these circumstances violates the constitutional prohibition against

19   cruel and unusual punishment.  Given Petitioner's extensive prior criminal history as well as the

20   nature of the commitment offenses, Petitioner's is not the "exceedingly rare" case of a

21   disproportionally high sentence.  Accordingly, Petitioner's claim should be denied.

## **RECOMMENDATION**

23   The Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be

24   DENIED and the Clerk of the Court be DIRECTED to enter judgment.

25   These Findings and Recommendations are submitted to the Honorable Oliver W.

26   Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636

27   (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court,

28   Eastern District of California.

1    Within thirty (30) days after being served with a copy, any party may file written

2 objections with the court and serve a copy on all parties.  Such a document should be captioned

3 "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections

4 shall be served and filed within ten (10) court days (plus three days if served by mail) after

5 service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to

6 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file objections within the

7 specified time may waive the right to appeal the District Court's order.  Martinez v. Y1st, 951

8 F.2d 1153 (9th Cir. 1991).

9

10 IT IS SO ORDERED.

11 Dated:    March 10, 2008                          /s/ John M. Dixon
                                          UNITED STATES MAGISTRATE JUDGE
12